SEALED

FILED
U.S. DISTRICT COURT
DISTRICT OF NEBRASKA

2022 MAY 17  PM 4: 12

OFFICE OF THE CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>RAMEL D. THOMPSON, CARL ESTWICK, JACKIE HARPER, TARYSH G. HOGUE, RICHARD L. KELLY, LENFIELD KENDRICK, HENRY T. LEWIS, TREVOR A. MCNEIL, MICHAEL A. PERKINS, MICHAEL A. PERKINS, JR., and SHAWN A. PRATER,<br><br>Defendants. | 8:22CR 125<br><br>INDICTMENT<br><br>18 U.S.C. § 1349<br>18 U.S.C. § 1343<br>18 U.S.C. § 2<br>18 U.S.C. § 1957<br>18 U.S.C. § 981(a)(1)(C)<br>18 U.S.C. § 982(a)(2)(A)<br>28 U.S.C. § 2461(c) |

The Grand Jury charges that

## COUNT I

### Conspiracy to Commit Wire Fraud

1.    During and between an unknown date, but no later than in or about April 2020, and in or about April 2022, in the District of Nebraska and elsewhere, the defendants, RAMEL D. THOMPSON, CARL ESTWICK, JACKIE HARPER, TARYSH G. HOGUE, RICHARD L. KELLY, LENFIELD KENDRICK, HENRY T. LEWIS, TREVOR A. MCNEIL, MICHAEL A. PERKINS, MICHAEL A. PERKINS, JR., and SHAWN A. PRATER, did knowingly and intentionally attempt and conspire with each other and with other persons, both known and unknown to the Grand Jury, to commit an offense against the United States, namely, wire fraud, Title 18, United States Code, Section 1343, a violation of Title 18, United States Code, Section 1349.

### *Object of the Conspiracy*

2.    It was a part and object of the conspiracy that RAMEL D. THOMPSON, CARL ESTWICK, JACKIE HARPER, TARYSH G. HOGUE, RICHARD L. KELLY, LENFIELD KENDRICK, HENRY T. LEWIS, TREVOR A. MCNEIL, MICHAEL A. PERKINS, MICHAEL A. PERKINS, JR., and SHAWN A. PRATER, and others, having devised and intended to devise

1

a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, caused to be transmitted by means of wire and radio communication in interstate commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme or artifice, in violation of Title 18, United States Code, Section 1343.

### The Parties

3.      At all relevant times, RAMEL D. THOMPSON, CARL ESTWICK, JACKIE HARPER, TARYSH G. HOGUE, RICHARD L. KELLY, HENRY T. LEWIS, TREVOR A. MCNEIL, MICHAEL A. PERKINS, MICHAEL A. PERKINS, JR., and SHAWN A. PRATER, resided in Omaha, Nebraska.

4.      At all relevant times, LENFIELD KENDRICK resided in Nebraska and Minnesota.

5.      At all relevant times, TREVOR A. MCNEIL resided in Nebraska and Georgia.

### The Paycheck Protection Program

6.      The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in March 2020 and designed to provide emergency financial assistance to the millions of Americans suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of forgivable loans to small businesses to preserve jobs by paying for certain expenses. This financial relief was referred to as the Paycheck Protection Program ("PPP"). Starting in December 2020, the PPP was renewed and the deadlines to apply were extended. Small businesses that received PPP loans in 2020 could apply for additional emergency assistance, referred to as a "Second Draw," in 2021.

7.      To obtain a PPP loan, a qualifying business was required to submit a PPP loan application, designated as an SBA Form 2483, which was signed by an authorized representative of the business. Applications could be submitted directly to a lender, or to an intermediary such as a loan broker that would forward the application to a lender. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application, the small business (through its authorized representative) was required to state, among other things, that it was in operation as of February 15, 2020, the number of its employees and its average monthly payroll expenses. These figures, among other factors, determined the amount of

money the small business could borrow under the PPP. In addition, businesses applying for a PPP loan were required to provide documents showing they were in operation during the relevant times and showing their payroll expenses. In the PPP application, the applicant certified that that the information provided in the application and in all supporting documents was true and accurate in all material respects, and acknowledged that knowingly making false statements to obtain a loan was punishable under federal law.

8.       A PPP loan application was processed by a participating lender. In the course of processing the loan, the lender transmitted data from the borrower's application, including information about the borrower, the stated number of employees and payroll figures, and the total amount of the prospective loan, to the Small Business Administration (SBA). If approved, the lender funded the PPP loan using its own monies, the repayment of which was guaranteed by the SBA, and wired the loan proceeds to the account designated by the applicant.

9.       The PPP required loan proceeds to be used only for certain business expenses, including payroll costs, mortgage interest, rent, and utilities.

10.      A borrower could apply for forgiveness of the entire PPP loan amount. To obtain forgiveness, a borrower was required to spend a minimum percentage of the loan on payroll costs, and the remainder on other permitted expenses, within a limited period of time. In the PPP loan forgiveness application, the applicant certified that the information provided in the forgiveness application was true and accurate in all material respects, and acknowledged that knowingly making false statements to obtain forgiveness was punishable under federal law.

*The Economic Injury Disaster Loan Program*

11.      The CARES Act also expanded the Economic Injury Disaster Loan ("EIDL") program, which is an SBA program that provides low-interest financing to small businesses, renters, and homeowners in regions affected by declared disasters. The CARES Act authorized the SBA to provide EIDLs of up to $2 million to eligible small businesses experiencing "substantial economic injury" due to the COVID-19 pandemic.

12.      EIDL proceeds could be used only for working capital to pay expenditures necessary to alleviate the specific economic injury the small business suffered due to COVID-19. Covered expenditures include fixed debts, payroll, accounts payable, and other ordinary and necessary financial obligations that the business could not meet as a direct result of the pandemic. EIDL proceeds could not be used to replace lost sales or profits or to expand a business. A business

3

that was not in operation at the time of the disaster was not eligible for an EIDL. Applicants could not, among other things, have been convicted of a felony within the preceding five years.

13.    The CARES Act also authorized the SBA to issue advances of up to $10,000 to small businesses within three days of applying for an EIDL. The amount of the advance was determined by the number of employees indicated on the EIDL application. An advance did not have to be repaid, but the amount was deducted from total loan eligibility.

14.    The EIDL application process collected information concerning the business and the business owner, including information regarding the business's gross revenue for the 12-month period preceding the disaster, which, for COVID-19, was defined as January 31, 2020; the cost of goods sold for the 12-month period preceding the disaster; and the number of employees employed by the business at the time of the disaster.

15.    EIDL funds were issued directly from the United States Treasury, and an applicant applied through the SBA via an online portal. In the electronic application, the applicant certified that all the information in the application was true and correct to the best of the applicant's knowledge. The application contained warnings that any false statement or misrepresentation to the SBA or any misapplication of loan proceeds could result in sanctions, including criminal penalties. The application also stated that the SBA relied upon the self-certifications in the EIDL application in determining whether the applicant was eligible for an EIDL.

### The Scheme to Defraud

16.    RAMEL D. THOMPSON, CARL ESTWICK, JACKIE HARPER, TARYSH G. HOGUE, RICHARD L. KELLY, LENFIELD KENDRICK, HENRY T. LEWIS, TREVOR A. MCNEIL, MICHAEL A. PERKINS, MICHAEL A. PERKINS, JR., and SHAWN A. PRATER knowingly executed, and attempted to execute, a scheme and artifice to defraud lenders and the SBA by means of materially false and fraudulent pretenses, representations, and promises made on and in connection with PPP and EIDL loan applications, and caused to be transmitted by means of wire and radio communication in interstate commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme or artifice and to obtain money and property to which they were not legally entitled, as stated below ("the Scheme").

17.    As part of the Scheme, RAMEL D. THOMPSON provided direction and guidance to other participants concerning how to fraudulently obtain funds, prepared false applications and false supporting documents on behalf of other participants and submitted a fraudulent application

4

for an EIDL loan. CARL ESTWICK, JACKIE HARPER, TARYSH G. HOGUE, RICHARD L. KELLY, LENFIELD KENDRICK, HENRY T. LEWIS, TREVOR A. MCNEIL, MICHAEL A. PERKINS, MICHAEL A. PERKINS, JR., and SHAWN A. PRATER submitted and caused to be submitted false applications, signed and caused to be signed false supporting documents, and received PPP and EIDL loan proceeds that had been fraudulently obtained.

18.     It was further part of the Scheme that RAMEL D. THOMPSON, CARL ESTWICK, JACKIE HARPER, TARYSH G. HOGUE, RICHARD L. KELLY, LENFIELD KENDRICK, HENRY T. LEWIS, TREVOR A. MCNEIL, MICHAEL A. PERKINS, MICHAEL A. PERKINS, JR., and SHAWN A. PRATER submitted and caused to be submitted applications for PPP and EIDL loans (the "Applications") concerning certain businesses (the "Businesses"). The Businesses included the following:

   a.   Smokin Gunz Bar B Que (Smokin Gunz), owned by CARL ESTWICK;
   b.   Mr. C's Rims and Tires Sales (Mr. C's), owned by CARL ESTWICK;
   c.   J Harper Holdings LLC d/b/a/ Sprague Street Auto (Sprague Street Auto), owned by JACKIE HARPER;
   d.   Hogue Enterprises, LLC (Hogue Enterprises), owned by TARYSH G. HOGUE;
   e.   Kelly Auto Detailing a/k/a Kelly's Complete Auto Detailing a/k/a Richard Kelly d/b/a Kellys Complete Auto Detailing (Kelly Auto Detailing), owned by RICHARD L. KELLY;
   f.   Kendrick & Kendrick Construction (K&K Construction), owned by LENFIELD KENDRICK;
   g.   Kendrick & Kendrick Group (K&K Group), owned by LENFIELD KENDRICK;
   h.   Neat Fleet LLC (Neat Fleet), owned by HENRY T. LEWIS;
   i.   McNeils Cleaning LLC (McNeils Cleaning), owned by TREVOR A. MCNEIL;
   j.   Perkins & Perkins Construction (P&P Construction), owned by MICHAEL A. PERKINS;
   k.   MAP Management LLC (MAP Management), owned by MICHAEL A. PERKINS;
   l.   Perkins Construction LLC (Perkins Construction), owned by MICHAEL A. PERKINS, JR.;
   m.   Prater Enterprise LLC (Prater Enterprise), owned by SHAWN A. PRATER; and
   n.   Ramel Thompson (as a sole proprietor) (Thompson).

Some Applications were submitted to lenders, which processed the Applications and forwarded information about them to the SBA, and other Applications were submitted directly to the SBA.

19.    It was further part of the Scheme that RAMEL D. THOMPSON, CARL ESTWICK, JACKIE HARPER, TARYSH G. HOGUE, RICHARD L. KELLY, LENFIELD KENDRICK, HENRY T. LEWIS, TREVOR A. MCNEIL, MICHAEL A. PERKINS, MICHAEL A. PERKINS, JR., and SHAWN A. PRATER misrepresented and omitted and caused to be misrepresented and omitted the following material facts on PPP and EIDL loan Applications submitted on behalf of the Businesses:

       a. that the Businesses had specified numbers of employees for whom each paid salaries and payroll taxes, or else had the specified number of paid independent contractors;

       b. that the Businesses had specified average monthly payroll expenses;

       c. that the loan proceeds would be used only for business-related purposes that were allowed by the terms of the loan, such as business payroll, rent, mortgage interest, and utilities;

       d. that each did not own any other purported business;

       e. that the Businesses had specified gross revenue for the 12-month period preceding January 31, 2020;

       f. that the Businesses had specified cost of goods sold for the 12-month period preceding January 31, 2020; and

       g. that the applicant had not been convicted of a felony within the previous five years.

20.    In truth and in fact, as RAMEL D. THOMPSON, CARL ESTWICK, JACKIE HARPER, TARYSH G. HOGUE, RICHARD L. KELLY, LENFIELD KENDRICK, HENRY T. LEWIS, TREVOR A. MCNEIL, MICHAEL A. PERKINS, MICHAEL A. PERKINS, JR., and SHAWN A. PRATER well knew, none of the Businesses had the number of employees specified on PPP Applications for whom they paid salaries and payroll taxes, or had the specified number of paid independent contractors; none of the Businesses had the average monthly payroll expenses specified on PPP Applications; the loan proceeds were not intended to be used, and were not used, only for business-related purposes that were allowed by the terms of the loans, such as payroll, rent, utilities and mortgage interest for the applicant Businesses; CARL ESTWICK and MICHAEL A. PERKINS purportedly owned other businesses but did not disclose them; none of the Businesses had the gross revenue for the 12-month period preceding January 31, 2020 specified on EIDL Applications; none of the Businesses had the cost of goods sold for the 12-month period

6

preceding January 31, 2020 specified on EIDL Applications; and RAMEL D. THOMPSON had been convicted of a felony within the preceding five years.

21.     It was further part of the Scheme that RAMEL D. THOMPSON, CARL ESTWICK, JACKIE HARPER, TARYSH G. HOGUE, RICHARD L. KELLY, LENFIELD KENDRICK, HENRY T. LEWIS, TREVOR A. MCNEIL, MICHAEL A. PERKINS, MICHAEL A. PERKINS, JR., and SHAWN A. PRATER created and caused to be created false documents to support the misrepresentations contained in the Applications. Among other things, RAMEL D. THOMPSON, CARL ESTWICK, JACKIE HARPER, TARYSH G. HOGUE, RICHARD L. KELLY, LENFIELD KENDRICK, HENRY T. LEWIS, TREVOR A. MCNEIL, MICHAEL A. PERKINS, MICHAEL A. PERKINS, JR., and SHAWN A. PRATER created and caused to be created false tax documents, false payroll records and false profit and loss summaries.

22.     It was further part of the Scheme that RAMEL D. THOMPSON, CARL ESTWICK, JACKIE HARPER, TARYSH G. HOGUE, RICHARD L. KELLY, LENFIELD KENDRICK, HENRY T. LEWIS, TREVOR A. MCNEIL, MICHAEL A. PERKINS, MICHAEL A. PERKINS, JR., and SHAWN A. PRATER submitted and caused to be submitted false documents in support of the Applications. Among other things, RAMEL D. THOMPSON, CARL ESTWICK, JACKIE HARPER, TARYSH G. HOGUE, RICHARD L. KELLY, LENFIELD KENDRICK, HENRY T. LEWIS, TREVOR A. MCNEIL, MICHAEL A. PERKINS, MICHAEL A. PERKINS, JR., and SHAWN A. PRATER submitted and caused to be submitted false tax documents, false payroll records and false profit and loss summaries.

23.     It was further part of the Scheme that, after receiving funds on behalf of the Businesses, CARL ESTWICK, JACKIE HARPER, TARYSH G. HOGUE, RICHARD L. KELLY, LENFIELD KENDRICK, HENRY T. LEWIS, TREVOR A. MCNEIL, MICHAEL A. PERKINS, and MICHAEL A. PERKINS, JR. conducted and caused to be conducted bank transactions to create the appearance that certain payments were for payroll or other business expenses that were permitted by the terms of the PPP and EIDL loans.

24.     It was further part of the scheme that PPP and EIDL loan recipients, including CARL ESTWICK, TARYSH G. HOGUE, RICHARD L. KELLY, HENRY T. LEWIS, and SHAWN A. PRATER, after receiving loan proceeds, provided to RAMEL D. THOMPSON kickback payment(s) disguised as payroll and rent.

25.     It was further part of the scheme that certain participants submitted PPP loan

forgiveness applications that falsely certified the portion of the PPP loan that was spent on payroll costs and other permitted expenses within a specified period of time after receiving the PPP loan, and submitted false supporting documents such as purported leases, false state and federal tax documents, and false lists of employees and payroll.

### Relevant Lenders and Financial Institutions

26.     Lender 1 was a federally insured financial institution based in Nebraska.  Lender 1 participated as a PPP lender to small businesses.

27.     Lender 2 was a federally insured credit union located in Nebraska. Lender 2 participated as a PPP lender to small businesses.

28.     Lender 3 was a small business lending company with offices in California.  Lender 3 participated in the SBA's PPP by, among other things, funding loans.

29.     Lender 4 was a financial technology company with offices in California, Colorado and in foreign countries.  Lender 4 participated in the SBA's PPP by, among other things, funding loans.

30.     Financial Institution 1 was a federally insured financial institution located in Nebraska.

31.     Financial Institution 2 was a federally insured financial institution based in Ohio.

32.     Financial Institution 3 was a federally insured financial institution based in South Dakota.

33.     Financial Institution 4 was a federally insured financial institution based in South Dakota.

34.     Financial Institution 5 was a federally insured financial institution based in South Dakota.

35.     Financial Institution 6 was a credit union located in Nebraska.

36.     Financial Institution 7 was a credit union located in Nebraska.

37.     Financial Institution 8 was a federally insured financial institution based in Nebraska.

38.     Financial Institution 9 was a credit union located in Nebraska.

### EIDL and PPP Loan Applications

39.     The following are 16 of the approximately 59 EIDL and PPP loan Applications submitted and caused to be submitted by RAMEL D. THOMPSON, CARL ESTWICK, JACKIE

HARPER, TARYSH G. HOGUE, RICHARD L. KELLY, LENFIELD KENDRICK, HENRY T. LEWIS, TREVOR A. MCNEIL, MICHAEL A. PERKINS, MICHAEL A. PERKINS, JR., and SHAWN A. PRATER in furtherance of the Scheme.

### PPP Loan Application Submitted to Lender 1

40.     Starting on or about April 15, 2020, MICHAEL A. PERKINS, caused a PPP application and updated PPP applications in the name of P&P Construction to be submitted to Lender 1.  The PPP applications requested $129,600, $205,200 or $110,243.56 to support P&P Construction's purported operation. In the applications, MICHAEL A. PERKINS falsely affirmed or caused to be falsely affirmed, among other information, that: (i) P&P Construction had six employees and an average monthly payroll of $51,840 or $82,080; (ii) the funds would be used to retain workers and maintain payroll or make other payments, all as specified under the PPP Rules; and (iii) MICHAEL A. PERKINS did not own any other purported business.

41.     The P&P Construction PPP application appended as supporting documentation: (i) a false and fraudulent list of employees and monthly payroll; (ii) a false and fraudulent IRS Form Schedule C (Profit or Loss From Business) for the year 2019, claiming that P&P Construction had gross receipts of $780,250 and a net profit of $2,270 in 2019; (iii) four false and fraudulent IRS Form 941s, Employer's Quarterly Federal Tax Return, claiming that P&P Construction paid wages of $20,515 during each of the four quarters of 2019; and (iv) two false and fraudulent "corrected" Form 941s, Employer's Quarterly Federal Tax Return, for the second and third quarters of 2019, claiming that P&P Construction paid wages of $155,520 during each of those two quarters.

42.     Lender 1 transmitted the application information to the SBA on or about April 28, 2020 and agreed to make the requested PPP loan.  On or about May 7, 2020, Lender 1 deposited $110,242 into an account created by MICHAEL A. PERKINS and designated by him to receive PPP loan proceeds for P&P Construction, specifically, account number XX-2906 at a branch of Lender 1.

### EIDL Loan Application Submitted to SBA

43.     On or about June 26, 2020, MICHAEL A. PERKINS caused an EIDL application in the name of P&P Construction, including a request for an EIDL advance, to be submitted to the SBA.  In the application, MICHAEL A. PERKINS falsely affirmed or caused to be falsely affirmed, among other information, that: (i) P&P Construction had $450,000 gross revenue for the twelve months prior to January 31, 2020; (ii) P&P Construction had $0 cost of goods sold for the

twelve months prior to January 31, 2020; and (iii) P&P Construction had eight employees as of January 31, 2020. In the Loan Agreement, MICHAEL A. PERKINS falsely affirmed or caused to be falsely affirmed, among other information, that P&P Construction would use all the loan proceeds as working capital for its business to alleviate economic injury caused by disaster.

44.     The SBA agreed to provide the EIDL advance and to make the requested loan, including a $100 filing fee. The SBA sent a wire transfer in the amount of $8,000 on or about June 30, 2020, and a wire transfer in the amount of $149,900 on or about July 2, 2020, to an account created by MICHAEL A. PERKINS and designated by him to receive the EIDL advance and the loan proceeds for P&P Construction, specifically, account number XX-908-000 at a branch of Financial Institution 6.

### PPP Loan Application Submitted to Lender 1

45.     On or about April 30, 2020, JACKIE HARPER caused a PPP application in the name of Sprague Street Auto to be submitted that was provided to Lender 1. The PPP application requested $57,600 to support Sprague Street Auto's purported operation. In the application, JACKIE HARPER falsely affirmed or caused to be falsely affirmed, among other information, that: (i) Sprague Street Auto had eight employees and an average monthly payroll of $23,040; and (ii) the funds would be used to retain workers and maintain payroll or make other payments, all as specified under the PPP Rules.

46.     The Sprague Street Auto PPP application appended as supporting documentation: (i) a false and fraudulent list of employees and monthly payroll; (ii) a false and fraudulent IRS Form Schedule C (Profit or Loss From Business) for the year 2019, claiming that Sprague Street Auto had gross receipts of $330,638 and a net profit of $15,848 in 2019; and (iii) four false and fraudulent IRS Form 941s, Employer's Quarterly Federal Tax Return, claiming that Sprague Street Auto paid identical wages of $69,120 during each quarter of 2019.

47.     Lender 1 transmitted the application information to the SBA on or about May 6, 2020 and agreed to make the requested PPP loan. On or about May 13, 2020, Lender 1 sent a wire transfer in the amount of $57,600 to an account created by JACKIE HARPER and designated by him to receive PPP loan proceeds for Sprague Street Auto, specifically, account number XX-7569 at a branch of Financial Institution 1.

### PPP Loan Application Submitted to Lender 1

48.     On or about April 30, 2020, TREVOR A. MCNEIL caused a PPP application in the

name of McNeils Cleaning to be submitted that was provided to Lender 1. The PPP application requested $189,997.50 to support McNeils Cleaning's purported operation. In the application, TREVOR A. MCNEIL falsely affirmed or caused to be falsely affirmed, among other information, that: (i) McNeils Cleaning had ten employees and an average monthly payroll of $75,999; and (ii) the funds would be used to retain workers and maintain payroll or make other payments, all as specified under the PPP Rules.

49.     The McNeils Cleaning PPP application appended as supporting documentation: (i) a false and fraudulent list of employees and monthly payroll; (ii) a false and fraudulent IRS Form Schedule C (Profit or Loss From Business) for the year 2019, claiming that McNeils Cleaning had gross receipts of $966,149 and a net profit of $15,848 in 2019; and (iii) four false and fraudulent IRS Form 941s, Employer's Quarterly Federal Tax Return, claiming that McNeils Cleaning paid identical wages of $75,999 during each quarter of 2019.

50.     Lender 1 transmitted the application information to the SBA on or about May 1, 2020 and agreed to make the requested PPP loan. On or about May 11, 2020, Lender 1 sent a wire transfer in the amount of $189,997 to an account designated by TREVOR A. MCNEIL to receive PPP loan proceeds for McNeils Cleaning, specifically, account number XX-6152 at a branch of Financial Institution 2.

### *PPP Loan Application Submitted to Lender 2*

51.     On or about May 4, 2020, MICHAEL A. PERKINS, JR. caused a PPP application in the name of Perkins Construction to be submitted that was provided to Lender 2. The PPP application requested $69,512 to support Perkins Construction's purported operation. In the application, MICHAEL A. PERKINS, JR. falsely affirmed or caused to be falsely affirmed, among other information, that: (i) Perkins Construction had eight employees and an average monthly payroll of $27,805; and (ii) that the funds would be used to retain workers and maintain payroll or make other payments, all as specified under the PPP Rules.

52.     The Perkins Construction PPP application appended as supporting documentation: (i) a false and fraudulent list of employees and monthly payroll; and (ii) a false and fraudulent IRS Form Schedule C (Profit or Loss From Business) for the year 2019 claiming that Perkins Construction had gross receipts of $379,107 and a net profit of $7,138 in 2019.

53.     Lender 2 forwarded the application to the SBA on or about May 27, 2020 and agreed to make the requested PPP loan. On or about June 1, 2020, Lender 2 deposited $69,513

into an account created by MICHAEL A. PERKINS, JR. and designated by him to receive PPP loan proceeds for Perkins Construction, specifically, account number XX-2002 at a branch of Lender 2.

### EIDL Loan Application Submitted to SBA

54.     On or about June 28, 2020, MICHAEL A. PERKINS, JR caused an EIDL application in the name of Perkins Construction, including a request for an EIDL advance, to be submitted to the SBA. In the application, MICHAEL A. PERKINS, JR. falsely affirmed or caused to be falsely affirmed, among other information, that: (i) Perkins Construction had $2,036,230 gross revenue for the twelve months prior to January 31, 2020; (ii) Perkins Construction had $0 cost of goods sold for the twelve months prior to January 31, 2020; and (iii) Perkins Construction had four employees as of January 31, 2020. In the Loan Agreement, MICHAEL A. PERKINS, JR. falsely affirmed or caused to be falsely affirmed, among other information, that Perkins Construction would use all the loan proceeds as working capital for its business to alleviate economic injury caused by disaster.

55.     The SBA agreed to provide the EIDL advance and to make the requested loan, including a $100 filing fee. The SBA sent a wire transfer in the amount of $4,000 on July 10, 2020, and a wire transfer in the amount of $149,900 on July 1, 2020, to an account created by MICHAEL A. PERKINS, JR. and designated by him to receive the EIDL advance and the loan proceeds for Perkins Construction, specifically, account number XX-463 at Financial Institution 6.

### PPP Loan Application Submitted to Lender 1

56.     In or about May 2020, HENRY T. LEWIS caused a PPP application in the name of Neat Fleet to be submitted that was provided to Lender 1. The PPP application requested $154,997 to support Neat Fleet's purported operation. In the application, HENRY T. LEWIS falsely affirmed or caused to be falsely affirmed, among other information, that: (i) Neat Fleet had ten employees and an average monthly payroll of $61,999; and (ii) that the funds would be used to retain workers and maintain payroll or make other payments, all as specified under the PPP Rules.

57.     The Neat Fleet PPP application appended as supporting documentation: (i) a false and fraudulent list of employees and monthly payroll; (ii) a false and fraudulent IRS Form Schedule C (Profit or Loss From Business) for the year 2019 claiming that Neat Fleet had gross receipts of $822,398 and a net profit of $25,700 in 2019; and (iii) four false and fraudulent IRS

Form 941s, Employer's Quarterly Federal Tax Return, claiming that Neat Fleet paid identical wages of $185,997 during each quarter of 2019.

58.     Lender 1 transmitted the application information to the SBA on or about June 4, 2020 and agreed to make the requested PPP loan. On or about June 16, 2020, Lender 1 sent a wire transfer in the amount of $154,997 to an account created by HENRY T. LEWIS and designated by him to receive PPP loan proceeds for Neat Fleet, specifically, account number XX-8353 at a branch of Financial Institution 5.

### EIDL Loan Application Submitted to SBA

59.     On or about April 8, 2020, HENRY T. LEWIS caused an EIDL application in the name of Neat Fleet to be submitted to the SBA. In the application, HENRY T. LEWIS falsely affirmed or caused to be falsely affirmed, among other information, that: (i) Neat Fleet had $165,000 gross revenue for the twelve months prior to January 31, 2020; (ii) Neat Fleet had $0 cost of goods sold for the twelve months prior to January 31, 2020; and (iii) Neat Fleet had ten employees as of January 31, 2020. In the Loan Agreement, HENRY T. LEWIS falsely affirmed or caused to be falsely affirmed, among other information, that Neat Fleet would use all the loan proceeds as working capital for its business to alleviate economic injury caused by disaster.

60.     The SBA agreed to make the requested loan, including a $100 filing fee. On or about July 29, 2020, the SBA sent a wire transfer in the amount of $40,400 to an account created by HENRY T. LEWIS and designated by him to receive EIDL loan proceeds for Neat Fleet, specifically, account number XX-8353 at Financial Institution 5.

### PPP Loan Application Submitted to Lender 1

61.     In or about May 2020, SHAWN A. PRATER caused a PPP application in the name of Prater Enterprise to be submitted that was provided to Lender 1. The PPP application requested $78,757 to support Prater Enterprise's purported operation. In the application, SHAWN A. PRATER falsely affirmed or caused to be falsely affirmed, among other information, that: (i) Prater Enterprise had eight employees and an average monthly payroll of $31,503; and (ii) that the funds would be used to retain workers and maintain payroll or make other payments, all as specified under the PPP Rules.

62.     The Prater Enterprise PPP application appended as supporting documentation: (i) a false and fraudulent IRS Form Schedule C (Profit or Loss From Business) for the year 2019 claiming that Prater Enterprise had gross receipts of $416,607 and a net profit of $258 in 2019;

13

and (ii) four false and fraudulent IRS Form 941s, Employer's Quarterly Federal Tax Return, claiming that Prater Enterprise paid identical wages of $94,510 during each quarter of 2019.

63.    Lender 1 transmitted the application information to the SBA on or about May 12, 2020 and agreed to make the requested PPP loan. On or about May 20, 2020, Lender 1 sent a wire transfer in the amount of $78,757 to an account created SHAWN A. PRATER and designated by him to receive PPP loan proceeds for Prater Enterprise, specifically, account number XX-9233 at a branch of Financial Institution 3.

### PPP Loan Application Submitted to Lender 1

64.    On or about May 18, 2020, LENFIELD KENDRICK caused a PPP application in the name of K&K Construction to be submitted that was provided to Lender 1. The PPP application requested $138,455 to support K&K Construction's purported operation. In the application, LENFIELD KENDRICK falsely affirmed or caused to be falsely affirmed, among other information, that: (i) K&K Construction had ten employees and an average monthly payroll of $55,382; and (ii) that the funds would be used to retain workers and maintain payroll or make other payments, all as specified under the PPP Rules.

65.    The K&K Construction PPP application appended as supporting documentation: (i) a false and fraudulent statement of monthly and yearly payroll; (ii) a false and fraudulent IRS Form Schedule C (Profit or Loss From Business) for the year 2019 claiming that K&K Construction had gross receipts of $1,409,730 and a net profit of $75,000 in 2019; and (iii) four false and fraudulent IRS Form 941s, Employer's Quarterly Federal Tax Return, claiming that K&K Construction paid identical wages of $199,125 during each quarter of 2019.

66.    Lender 1 transmitted the application information to the SBA on or about June 4, 2020 and agreed to make the requested PPP loan. On or about June 11, 2020, Lender 1 deposited $138,455 into an account created by LENFIELD KENDRICK and designated by him to receive PPP loan proceeds for K&K Construction, specifically, account number XX-1326 at a branch of Financial Institution 4.

### PPP Loan Application Submitted to Lender 1

67.    In or about June 2020, RICHARD L. KELLY caused a PPP application in the name of Kelly Auto Detailing to be submitted that was provided to Lender 1. The PPP application requested $189,997 to support Kelly Auto Detailing's purported operation. In the application, RICHARD L. KELLY falsely affirmed or caused to be falsely affirmed, among other information,

14

that: (i) Kelly Auto Detailing had ten employees and an average monthly payroll of $75,999; and (ii) that the funds would be used to retain workers and maintain payroll or make other payments, all as specified under the PPP Rules.

68.     The Kelly Auto Detailing PPP application appended as supporting documentation: (i) a false and fraudulent list of employees and monthly payroll; (ii) a false and fraudulent IRS Form Schedule C (Profit or Loss From Business) for the year 2019 claiming that Kelly Auto Detailing had gross receipts of $982,200 and a net profit of $31,902 in 2019; and (iii) four false and fraudulent IRS Form 941s, Employer's Quarterly Federal Tax Return, claiming that Kelly Auto Detailing paid identical wages of $75,999 during each quarter of 2019.

69.     Lender 1 transmitted the application information to the SBA on or about June 25, 2020 and agreed to make the requested PPP loan.  On or about July 1, 2020, Lender 1 sent a wire transfer in the amount of $189,997 to an account created by RICHARD L. KELLY and designated by him to receive PPP loan proceeds for Kelly Auto Detailing, specifically, account number XX-750-00 at a branch of Financial Institution 7.

### *EIDL Loan Application Submitted to SBA*

70.     On or about August 26, 2020, RAMEL D. THOMPSON caused an EIDL application in the name of Thompson to be submitted to the SBA.  In the application, RAMEL D. THOMPSON falsely affirmed or caused to be falsely affirmed, among other information, that: (i) Thompson had $156,000 gross revenue for the twelve months prior to January 31, 2020; (ii) Thompson had $69,500 cost of goods sold for the twelve months prior to January 31, 2020; (iii) Thompson had twelve employees as of January 31, 2020; and (iv) RAMEL D. THOMPSON had not been convicted of a felony within the preceding five years.

71.     The SBA declined to make the requested loan.

### *PPP Loan Application Submitted to Lender 3*

72.     On or about February 18, 2021, MICHAEL A. PERKINS caused a PPP application in the name of MAP Management to be submitted that was provided to Lender 3.  The PPP application requested $80,381 to support MAP Management's purported operation. In the application, MICHAEL A. PERKINS falsely affirmed or caused to be falsely affirmed, among other information, that: (i) MAP Management had eight employees and an average monthly payroll of $32,152; (ii) that the funds would be used to retain workers and maintain payroll or make other payments, all as specified under the PPP Rules; and (iii) MICHAEL A. PERKINS did not own

any other purported business.

73.     The MAP Management PPP application appended as supporting documentation: (i) false and fraudulent lists of employees and payroll for 2019 and 2020; (ii) a false and fraudulent IRS Form Schedule C (Profit or Loss From Business) for the year 2019 claiming that MAP Management had gross receipts of $698,005 and a net profit of $87,034 in 2019; and (iii) four false and fraudulent IRS Form 941s, Employer's Quarterly Federal Tax Return, claiming that MAP Management paid identical wages of $98,400 during each quarter of 2019; and (iv) four false and fraudulent IRS Form 941s, Employer's Quarterly Federal Tax Return, claiming that MAP Management paid between $60,900 and $90,720 in wages during each quarter of 2020.

74.     Lender 3 transmitted the application information to the SBA on or about March 5, 2021 and agreed to make the requested PPP loan.  On or about March 17, 2021, Lender 3 sent a wire transfer in the amount of $80,380 to an account created by MICHAEL A. PERKINS and designated by him to receive PPP loan proceeds for MAP Management, specifically, account number XX-2218 at a branch of Financial Institution 6.

***PPP Loan Application Submitted to Lender 3***

75.     On or about March 9, 2021, TARYSH G. HOGUE caused a PPP application in the name of Hogue Enterprises to be submitted that was provided to Lender 3.  The PPP application requested a loan to support Hogue Enterprises' purported operation. In the application, TARYSH G. HOGUE falsely affirmed or caused to be falsely affirmed, among other information, that: (i) Hogue Enterprises had eight employees; and (ii) that the funds would be used to retain workers and maintain payroll or make other payments, all as specified under the PPP Rules.

76.     The Hogue Enterprises PPP application appended as supporting documentation: (i) a false and fraudulent list of employees and monthly payroll; (ii) a false and fraudulent IRS Form Schedule C (Profit or Loss From Business) for the year 2019 claiming that Hogue Enterprises had gross receipts of $769,398 and a net profit of $11,088 in 2019; (iii) a false and fraudulent IRS Form Schedule C (Profit or Loss From Business) for the year 2020 claiming that Hogue Enterprises had gross receipts of $752,310 and a net profit of $22,610 in 2020; (iv) four false and fraudulent IRS Form 941s, Employer's Quarterly Federal Tax Return, claiming that Hogue Enterprises paid identical wages of $177,900 during each quarter of 2020; and (v) seven false and fraudulent IRS W-2 Forms (Wage and Tax Statement) for the year 2019 claiming that Hogue Enterprises paid specified wages to seven named individuals.

16

77.     Lender 3 transmitted the application information to the SBA on or about March 16, 2021 and agreed to make the requested PPP loan. On or about March 29, 2021, Lender 3 sent a wire transfer in the amount of $152,960 to an account created by TARYSH G. HOGUE and designated by him to receive PPP loan proceeds for Hogue Enterprises, specifically, account number XX-1846 at a branch of Financial Institution 9.

### *PPP Loan Application Submitted to Lender 3*

78.     On or about March 10, 2021, CARL ESTWICK caused a PPP application in the name of Smokin Gunz to be submitted to Lender 3. The PPP application requested a loan to support Smokin Gunz's purported operation. In the application, CARL ESTWICK falsely affirmed or caused to be falsely affirmed, among other information, that: (i) the funds would be used to retain workers and maintain payroll or make other payments, all as specified under the PPP Rules; and (iii) CARL ESTWICK did not own any other purported business.

79.     The Smokin Gunz PPP application appended as supporting documentation: (i) a false and fraudulent list of employees and monthly payroll for 2020; (ii) a false and fraudulent IRS Form Schedule C (Profit or Loss From Business) for the year 2018, claiming that Smokin Gunz had gross receipts of $754,200 and a net profit of $1500 in 2018; (iii) a false and fraudulent IRS Form Schedule C (Profit or Loss From Business) for the year 2020, claiming that Smokin Gunz had gross receipts of $669,910 and a net profit of $20,000 in 2020; (iv) four false and fraudulent IRS Form 941s, Employer's Quarterly Federal Tax Return, claiming that Smokin Gunz paid wages of $177,900 during each of the four quarters of 2019; and (v) four false and fraudulent IRS Form 941s, Employer's Quarterly Federal Tax Return, claiming that Smokin Gunz paid wages of $152,900 during each of the four quarters of 2020. Lender 3 determined the loan amount based on the payroll figures provided in the false and fraudulent IRS Form 941s.

80.     Lender 3 transmitted the application information to the SBA on or about March 17, 2021 and agreed to make the requested PPP loan. On or about April 7, 2021, Lender 3 sent a wire transfer in the amount of $178,383 to an account created by CARL ESTWICK and designated by him to receive PPP loan proceeds for Smokin Gunz, specifically, account number XX-7870 at a branch of Financial Institution 8.

### *PPP Loan Application Submitted to Lender 4*

81.     In or about April 2021, CARL ESTWICK caused a PPP application in the name of Mr. C's to be submitted to Lender 4. The PPP application requested $123,685 to support Mr. C's

17

purported operation. In the application, CARL ESTWICK falsely affirmed or caused to be falsely affirmed, among other information, that: (i) Mr. C's had eight employees and an average monthly payroll of $59,300; (ii) the funds would be used to retain workers and maintain payroll or make other payments, all as specified under the PPP Rules; and (iii) CARL ESTWICK did not own any other purported business.

82.     The Mr. C's PPP application appended as supporting documentation: (i) a false and fraudulent list of employees and monthly payroll; (ii) a false and fraudulent IRS Form Schedule C (Profit or Loss From Business) for the year 2019, claiming that Mr. C's had gross receipts of $818,198 and a net profit of $21,500 in 2019; (iii) four false and fraudulent IRS Form 941s, Employer's Quarterly Federal Tax Return, claiming that Mr. C's paid identical wages of $177,900 during each quarter of 2019; and (iv) one false and fraudulent Form 941, Employer's Quarterly Federal Tax Return, for the first quarter of 2020, claiming that Mr. C's paid wages of $61,651 during that quarter.

83.     Lender 4 transmitted the application information to the SBA on or about April 27, 2021 and agreed to make the requested PPP loan. On or about May 10, 2021, Lender 4 sent a wire transfer in the amount of $123,685 to an account created by CARL ESTWICK and designated by him to receive PPP loan proceeds for Mr. C's, specifically, account number XX-5564 at a branch of Financial Institution 8.

### *Scope of the Conspiracy*

84.     As part of the conspiracy, RAMEL D. THOMPSON, CARL ESTWICK, JACKIE HARPER, TARYSH G. HOGUE, RICHARD L. KELLY, LENFIELD KENDRICK, HENRY T. LEWIS, TREVOR A. MCNEIL, MICHAEL A. PERKINS, MICHAEL A. PERKINS, JR., and SHAWN A. PRATER submitted fraudulent Applications seeking PPP loans, EIDL loans and advances in the amount of at least $7,642,651, and obtained PPP loans, EIDL loans and advances in the amount of approximately $2,467,116.

All in violation of Title 18, United States Code, Section 1349.

### COUNTS II-XVII

### Wire Fraud

85.     Paragraphs 3 through 84 of Count One of this Indictment are re-alleged and incorporated as if fully set forth herein, and set forth a scheme and artifice to defraud.

86.     On or about the dates set forth below, in the District of Nebraska and elsewhere,

the defendants, RAMEL D. THOMPSON, CARL ESTWICK, JACKIE HARPER, TARYSH G. HOGUE, RICHARD L. KELLY, LENFIELD KENDRICK, HENRY T. LEWIS, TREVOR A. MCNEIL, MICHAEL A. PERKINS, MICHAEL A. PERKINS, JR., and SHAWN A. PRATER, having devised and intended to devise a scheme and artifice to defraud, and to obtain money by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing such scheme and artifice and attempting to do so, did knowingly transmit and cause to be transmitted by means of wire communication in interstate commerce the writings, signs, signals, and pictures described below for each count, and did aid and abet the same, as follows:

| Count | Defendant | Date | Description of Wire |
|-------|-----------|------|---------------------|
| II | MICHAEL A. PERKINS | April 28, 2020 | Lender 1 transmitted PPP application information to the SBA |
| III | MICHAEL A. PERKINS | July 2, 2020 | Wire transfer of $149,900 originated by SBA in Colorado to account number XX-908-000 at a branch of Financial Institution 6 in Nebraska |
| IV | JACKIE HARPER | May 6, 2020 | Lender 1 transmitted PPP application information to the SBA |
| V | TREVOR A. MCNEIL | May 1, 2020 | Lender 1 transmitted PPP application information to the SBA |
| VI | MICHAEL A. PERKINS, JR. | May 27, 2020 | Lender 2 transmitted PPP application information to the SBA |
| VII | MICHAEL A. PERKINS, JR. | July 1, 2020 | Wire transfer of $149,900 originated by SBA in Colorado to account number XX-463 at a branch of Financial Institution 6 in Nebraska |
| VIII | SHAWN A. PRATER | May 12, 2020 | Lender 1 transmitted PPP application information to the SBA |
| IX | LENFIELD KENDRICK | June 4, 2020 | Lender 1 transmitted PPP application information to the SBA |
| X | HENRY T. LEWIS | June 4, 2020 | Lender 1 transmitted PPP application information to the SBA |
| XI | HENRY T. LEWIS | July 29, 2020 | Wire transfer of $40,400 originated by SBA in Colorado to account number XX-8353 at a branch of Financial Institution 5 in Nebraska |
| XII | RICHARD L. KELLY | June 25, 2020 | Lender 1 transmitted PPP application information to the SBA |
| XIII | RAMEL D. THOMPSON | August 26, 2020 | Transmission of EIDL application information to SBA |
| XIV | MICHAEL A. PERKINS | March 5, 2021 | Lender 3 transmitted PPP application information to the SBA |
| XV | TARYSH G. | March 16, | Lender 3 transmitted PPP application information |

|  | HOGUE | 2021 | to the SBA |
|---|---|---|---|
| XVI | CARL ESTWICK | March 17, 2021 | Lender 3 transmitted PPP application information to the SBA |
| XVII | CARL ESTWICK | April 27, 2021 | Lender 4 transmitted PPP application information to the SBA |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNTS XVIII-XXII

### Money Laundering

87.     On or about the date set forth below, in the District of Nebraska and elsewhere, the defendants, HENRY T. LEWIS, SHAWN A. PRATER, MICHAEL A. PERKINS, MICHAEL A. PERKINS, JR., and CARL ESTWICK, did knowingly engage and attempt to engage in a monetary transaction by, through or to a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000, as set forth below, and did aid and abet the same, such property having been derived from a specified unlawful activity, that is: Wire Fraud and Conspiracy to Commit Wire Fraud, as alleged in Counts I through XVII, in violation of Title 18, United States Code, Sections 1343, 1349 and 2.

| Count | Defendant | Date | Description of Transaction |
|---|---|---|---|
| XVIII | HENRY T. LEWIS | June 26, 2020 | Purchase of a 2013 Chevrolet Silverado 1500 Crew Cab pickup from Corwin Toyota for $15,299 in cash. |
| XIX | SHAWN A. PRATER | July 2, 2020 | Acquisition of $24,345 cashier's check payable to DRI Title and Escrow to fund purchase of residence at 2002 Maple Street, Omaha, Nebraska |
| XX | MICHAEL A. PERKINS | July 9, 2020 | Transfer of $148,000 from Metro Credit Union business account of Perkins & Perkins, Construction, Acct 908-0009, to business account of Perkins Construction, LLC, at Metro Credit Union, Acct xx463 |
| XXI | MICHAEL A. PERKINS, JR. | July 27, 2020 | Purchase of two dump trucks from Cornhusker International Trucks for $328,200 |
| XXII | CARL ESTWICK | May 19, 2021 | Payment of $34,171 by check to Valerie Estwick |

All in violation of Title 18, United States Codes, Sections 1957 and 2.

## FORFEITURE ALLEGATION

1.      The allegations contained in this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(2)(A).

2.      Upon conviction of one or more of the offenses set forth in Counts I-XVII of this Indictment, the defendants, RAMEL D. THOMPSON, CARL ESTWICK, JACKIE HARPER, TARYSH G. HOGUE, RICHARD L. KELLY, LENFIELD KENDRICK, HENRY T. LEWIS, TREVOR A. MCNEIL, MICHAEL A. PERKINS, MICHAEL A. PERKINS, JR., and SHAWN A. PRATER, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(2), any property constituting, or derived from, proceeds the defendant obtained directly or indirectly, as the result of such violation. The property to be forfeited includes, but is not limited to, the following:

        a.   A money judgment in an amount equal to the proceeds obtained as a result of the offenses;

        b.   2006 Bentley, VIN: SCBBR53W06C033988, titled in the name of CARL ESTWICK;

        c.   2013 Chevrolet Silverado 1500 Crew Cab, VIN: 3GCPKTE78DG188719, titled in the name of HENRY T. LEWIS;

        d.   2020 Blue International HV507 dump truck, VIN: 3HAEGTATXLL338049, titled in the name of Perkins Construction LLC;

        e.   Grey Henderson 17' Dump Body, S/N MKE-735708-1;

        f.   2020 White International HV507 dump truck, VIN: 3HAEGTAT4LL336314, titled in the name of Perkins Construction LLC; and

21

    g.  Black Henderson 17' Dump Body, S/N: MKE-73550-1;

    h.  Residence at 2002 Maple Street Omaha, Nebraska, further identified as Dewey

        Place, Lot 1 Block 0, 50x122;

    i.  Funds not exceeding $9,643.19 contained in account number xxxx5720 at Cobalt

       Credit Union; and

    j.  Funds not exceeding $87,613.63 contained in account number xxxx3919 at

       Access Bank.

3.      If any of the property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States of America, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other property of the defendant up to the value of the property described above as being subject to forfeiture.

    All pursuant to 18 U.S.C. § 981(a)(1)(C), 18 U.S.C. § 982(a)(2)(A), 28 U.S.C. § 2461(c), and Rule 32.2(a), Federal Rules of Criminal Procedure.

A TRUE BILL

_____
FOREPERSON

    The United States of America requests that trial of this case be held in Omaha, Nebraska, pursuant to the rules of this Court.

_____
John E. Higgins #19546

22